**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

HANNAH BALDER,

       Plaintiff,                             Case No.:

v.                                                           Hon.

MICHIGAN DEPARTMENT OF HEALTH &
HUMAN SERVICES,

       Defendant.

Kyle M. Williams (P77227)
Simon Zagata (P83162)
Disability Rights Michigan
Attorneys for Plaintiff
4095 Legacy Parkway, Ste. 500
Lansing MI  48911-4263
Phone: (517) 487-1755
kwilliams@drmich.org
szagata@drmich.org

David A. Nacht (P47034)
Fabiola A. Galguera (P84212)
NACHTLAW, P.C.
Attorneys for Plaintiff
101 N. Main St., Suite 555
Ann Arbor, Michigan 48104
(734) 663-7550
dnacht@nachtlaw.com
fgalguera@nachtlaw.com

There is no other pending or resolved civil action arising out
of this transaction or occurrence alleged in the complaint.

**COMPLAINT AND JURY DEMAND**

Plaintiff, Hannah Balder, by and through her attorneys, DISABILITY RIGHTS MICHIGAN and NACHTLAW, P.C., hereby alleges as follows:

## PARTIES, JURISDICTION, AND VENUE

1. This is an action for failure to accommodate in violation of the Americans with Disabilities Act ("ADA"), Title I, 42 U.S.C. § 12111, *et seq*, as amended, and the Michigan Persons with Disabilities Civil Rights Act ("MPDCRA"), MCL 37.1101, *et seq*.

2. Plaintiff, Hannah Balder, suffers from a physical disability.

3. She was formerly employed at Michigan Rehabilitative Services ("MRS").

4. MRS is a division of Defendant, Michigan Department of Health and Human Services ("MDHHS").

5. This Court has jurisdiction pursuant to 42 U.S.C. 12101, *et seq* (failure to accommodate); 28 U.S.C. § 1331 (federal question jurisdiction); and 28 U.S.C. § 1343(a)(4) (jurisdiction over civil rights claims). This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff Balder's state law claim of failure to accommodate in violation of the MPDCRA, MCL 37.1101, *et seq*.

6. Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 1391(b)(2), as all events giving rise to this cause of action occurred in the Western District of Michigan, County of Ingham and Defendant resides in Western District of Michigan, County of Ingham.

7. Defendant MDHHS is an employer and Plaintiff Balder is an employee within the meaning of Title I and the MPDCRA.

8. Plaintiff Balder filed a charge of discrimination under the Americans with Disabilities Act with the EEOC, against Defendant MDHHS.

9. After investigation, the EEOC found that there was probable cause to believe that Defendant MDHHS denied Plaintiff Balder's reasonable accommodation request based on her disability.

10. The EEOC then sent Plaintiff Balder her right to sue on or about September 15, 2020, and Plaintiff has filed this complaint within 90 days of receiving her notice of rights.

## STATEMENT OF FACTS
### Plaintiff Balder's Physical Disability

11. Plaintiff Balder's back pain stems from a vertebral stress fracture of the lumbar spine she suffered in 2009 and a suspected second fracture of the same vertebra in 2017.

12. Plaintiff Balder is diagnosed with spondylosis, facet joint syndrome, sacroiliac joint dysfunction and other degenerative arthritis related to the stress fracture in her lumbar spine.

13. Plaintiff Balder's back problems substantially limit several of her major life activities, including standing, lifting, bending and sitting.

14. Sitting for more than an hour or standing for more than 15 minutes at a time causes her pain.

15. Plaintiff Balder's back pain is arthritic, meaning it is worse in the morning and when it is cold.

16. Plaintiff Balder's pain is an aching, burning sensation that starts in her lumbar spine, travels to her lower back, hips and even to her legs.

17. When the pain travels to her legs, it causes numbness in her leg, making it difficult to walk.

18. The mental fatigue this pain causes is difficult to endure; it is uncomfortable, distracting and exhausting.

19. Knowing the pain is coming every single day saps Plaintiff Balder's energy and makes her dread the activities she knows will exacerbate the pain.

20. Plaintiff Balder has tried occupational and physical therapy to reduce her pain, without success.

21. What best relieves Plaintiff Balder's pain is rest. Laying down takes tension off Plaintiff Balder's back, easing sore muscles and stiff joints.

22. Starting slowly in the morning is important for Plaintiff Balder. Because the pain is worse in the morning, taking time to wake up and move slowly through morning activities as her back warms up reduces pain throughout the entire day.

### **Plaintiff Balder Starts Working at MRS**

23. Defendant MDHHS hired Plaintiff Balder through MRS as a Rehabilitation Counselor 9 on August 12, 2018.

24. Plaintiff Balder worked out of MRS' Lansing District Office.

25. As a rehabilitation counselor, Plaintiff Balder's job description was to "… complete and oversee a variety of professional assignments to provide vocational rehabilitation guidance and counseling to people with mental, physical, or emotional disabilities." (**Ex. 1**)

26. Plaintiff Balder's job duties included assessing a client's eligibility and need for rehabilitation services, developing diagnostic plans for those clients, developing individual rehabilitation plans and working with clients in job placement programs. (**Ex. 1**)

27. Plaintiff Balder was also expected to maintain records, prepare reports, and do basic clerical tasks like data entry. (**Ex. 1**).

28. In her work, Plaintiff Balder often had to travel offsite to meet with her clients without the supervision of other MRS staff.

4

## **Plaintiff Makes a Reasonable Accommodation Request, which Defendant MDHHS Denies**

29. Due to the morning pain Plaintiff Balder experiences, she made a reasonable accommodation request to Defendant MDHHS on October 1, 2018.

30. Plaintiff Balder requested an ergonomic evaluation of her workspace, an alternative desk chair, and the option to complete her clerical duties from home.

31. The duties Plaintiff Balder requested to complete from home were documenting meetings, eligibilities and service plans, entering progress notes, and collaborating with community partners via emails and phone calls.

32. The tasks Plaintiff Balder was requesting to complete at home were tasks that did not require direct supervision from another MRS employee.

33. Her request had nothing to do with her ability to conduct her school visits.

34. The purpose of Plaintiff Balder's request for telework was to give her pain a reasonable amount of time to dissipate in the morning.

35. As part of her reasonable accommodation request, Plaintiff Balder included a form, filled out by her doctor, stating that she can only tolerate sitting or standing for short periods of time and that she would benefit from working from home.

36. On November 19, 2018, Defendant MDHHS Office of Human Resources employee Jean Ann Stacey signed Plaintiff Balder's reasonable accommodation request.

37. Ms. Stacey referred Plaintiff Balder to the Business Network Division (BND) of MRS for a worksite evaluation.

38. Ms. Stacey wrote that "[l]imited time at home must be arranged with/and receive prior approval for tasks as specified."

39. Ms. Stacey also emailed Plaintiff Balder on November 19, stating that the Office of Human Resources had approved her reasonable accommodation request and explaining that MRS would schedule an appointment for the worksite evaluation.

40. Ms. Stacey did not mention any objections to Plaintiff Balder's request to work from home.

41. The next day, Defendant MDHHS changed course, issuing a corrected reasonable accommodation decision.

42. With no explanation, Defendant MDHHS denied Plaintiff Balder's request to work from home but approved the request for a workspace evaluation.

43. On December 11, 2018, MDHHS completed their evaluation of Plaintiff Balder's workspace.

44. The evaluation found that Plaintiff Balder has a limited tolerance for sitting and standing, difficulty reaching objects on the floor, required modifications to her workstation, has a limited ability to lift, and needed modified job duties or assistive devices to perform her job duties.

45. The evaluation also found that Plaintiff Balder's data entry and word processing duties required extensive keyboard and mouse usage.

46. The evaluation recommended a new office chair for Plaintiff Balder and other workspace modifications.

47. Defendant MDHHS' evaluation stated that pain in Plaintiff Balder's lumbar area could be a barrier to work focus and productivity.

48. The evaluation found prolonged sitting could cause Plaintiff Balder intermittent radiculopathy in her lower right leg.

49. Additional potential barriers in the evaluation included spine pain caused by tasks like transcribing information and lower extremity and back fatigue caused by frequent printing of documents and accessing documents at the printer.

50. The request for telework, in addition to the ergonomic evaluation was reasonable because working laying down on a horizontal surface is pivotal to Plaintiff Balder's pain management process, as her spine is tender to the touch; chairs with firm backing or lumbar support exacerbate her pain.

### Plaintiff Asks About her Denial

51. Plaintiff Balder sent several emails asking for someone to explain why Defendant MDHHS denied her request to work from home.

52. On December 5, 2018, Ms. Stacey responded to Plaintiff Balder.

53. Ms. Stacey explained that the accommodation response approving limited work from home was a mistake.

54. She wrote that "[w]orking from home is a privilege, not a right, even under the ADA."

55. As stated above, the tasks Plaintiff Balder requested to complete at home did not require in-person supervision.

56. She entered her progress notes and meeting documentation in the AWARE case system.

57. Her supervisors had access to that system and could review Plaintiff Balder's work regardless of where she completed it.

58. In fact, Plaintiff Balder had remote access to the AWARE system from the day she started with MRS via a work-issued laptop.

59. That said, MRS left Plaintiff Balder to work largely unsupervised: she visited clients in schools and work placements by herself, contacted community business partners by herself, had an office to herself and completed notes in the AWARE system by herself.

60. Despite the overwhelming amount of independent work Plaintiff Balder did in her day-to-day, Defendant MDHHS denied her accommodation request because she needed "supervision."

61. Plaintiff Balder continued to discuss accommodations with Defendant MDHHS.

62. However, Defendant MDHHS continued to shut down her requests.

63. The reasoning changed from the need for supervision to a blanket denial in order to allegedly conform with MRS's policy disallowing telework.

64. Plaintiff Balder's supervisor said that allowing Plaintiff Balder to work from home would be unfair to other employees and set a bad precedent.

### In 2020, Defendant MDHHS Fully Transitions to Telework

65. In March of 2020, at the beginning of the Covid-19 pandemic in the United States, MRS employees, including Plaintiff Balder, were told to telework full-time. The change applied to all rehabilitation counselors.

66. There was no jump forward in technology from November 2018 to March of 2020 that made teleworking possible for MRS employees.

67. In fact, Plaintiff Balder pursued her request to telework until the day MRS required all MRS employees work from home.

68. It was possible to telework the entire time Plaintiff Balder worked at MRS if the situation made it necessary.

69. MRS' refusal to allow Plaintiff Balder to telework was not based on MRS' perception that Plaintiff Balder was unable to perform her job duties remotely.

70. Plaintiff Balder's situation warranted telework and her request was reasonable in light of her job responsibilities and MRS' capabilities.

71. The ability for a full-department transition to telework shows that Defendant MDHHS acted capriciously in stating their policy on telework barred Plaintiff Balder's reasonable accommodation.

**Defendant MDHHS's Failure to Accommodate Resulted in Significant Harm**

72. For a year, from September 2018 to November 2019, Plaintiff Balder suffered through working at the office without the option to telework.

73. As a result, she would have to take time off from work in order to alleviate her unbearable pain.

74. After using her vacation and sick time to manage pain that could have been managed with an accommodation, she could not take time off for Thanksgiving, forcing her to miss the holiday with family.

75. The pain became so severe, Plaintiff Balder's doctor recommended her for a surgical procedure, a spinal cord stimulator.

76. Spinal cord stimulators are implanted between the spinal cord and the vertebra and send small levels of electricity directly into the spine to mask pain.

77. Notably, they do not eliminate the pain or treat the underlying cause.

78. In September of 2019, Plaintiff Balder did a 5-day trial with a spinal cord stimulator implant.

9

79. Getting the trial cord stimulator involved being put under twilight anesthesia, local injections of painkillers in her lower back, and the injection of wires into her back that were then threaded up her spine, which were then left to dangle out of her lower back and attached to a battery pack that was taped to her skin.

80. It was important that she limit her movement so that she did not dislodge the battery, the wires, or damage her back.

81. The week Plaintiff Balder received the trial implant, her supervisor, Shelly Neal, warned Plaintiff Balder that she must go to a 3-day motivational interviewing training or risk being in trouble with management.

82. This warning came despite Plaintiff Balder telling Ms. Neal that she was in pain and had a limited ability to move.

83. At the training, Plaintiff Balder's back was still inflamed from the surgery.

84. Her spine hurt to the touch and she was barely able to move.

85. Plaintiff Balder was so uncomfortable that she was in tears.

86. The leader of the training told her to go home.

87. The trial stimulator did provide Plaintiff Balder some relief, so on November 7, 2019, Plaintiff Balder underwent surgery to receive a permanent spinal cord stimulator.

88. Plaintiff Balder took 4 weeks off of work for the surgery and recovery, during which she was not paid since her leave was under the Family and Medical Leave Act.

89. Plaintiff Balder had throbbing pain at the surgery site after leaving the hospital, along with a permanent scar near her bra line.

90. Her movement was limited to avoid dislodging the battery pack or jostling the wires implanted along her spine.

91. Plaintiff Balder had to have her parents come stay with her to help her through the recovery. Her mother came for two of the four weeks and her father came for the other two weeks.

92. During her recovery, Plaintiff Balder was unable to dress herself, bathe herself, or walk her dog. Her parents had to assist with almost all activities of daily living.

93. As a woman in her twenties, this caused Plaintiff Balder significant anxiety and embarrassment. She felt guilty because her mother had to take time off of work.

94. When she returned to work, Plaintiff Balder's supervisors assumed that the surgery fixed everything and that she was no longer in pain.

95. This was not the case.

96. Spinal cord implants require programming and re-programming to provide effective pain relief.

97. It can often take six months or more to program the implant for the best relief.

98. Plaintiff Balder was still working with doctors to program her implant in July of 2020.

99. Even with the device fully programmed, she still experiences pain, just less of it.

100. After returning to work, Plaintiff Balder still would have benefitted from an accommodation allowing her to telework for a portion of the day.

101. The implant is a pain management tool, not a pain eliminator.

102. Unfortunately, the implant itself caused her pain at work.

103. The battery portion of the implant is held in place by scar tissue, which does not fully form until six months after surgery.

104. For those six months, if Plaintiff Balder leaned the wrong way on the battery, she experienced a stabbing pain in her side that slowly faded.

105. This pain was more likely to happen while sitting at a desk.

106. After almost two years of having her disability and pain ignored, on August 14, 2020, Plaintiff Balder resigned from MRS.

107. She was constructively discharged; Defendant MDHHS intentionally created working conditions so intolerable that Plaintiff Balder had no choice but to resign.

108. Defendant MDHHS did so because of Plaintiff Balder's disability

109. Any reasonable person would have resigned in Plaintiff Balder's position based on Defendant MDHHS's conduct.

## COUNT I

### FAILURE TO ACCOMODATE IN VIOLATION OF TITLE I OF THE ADA, 42 U.S.C § 12111, *et seq*

110. Plaintiff Balder incorporates Paragraphs 1 through 109 as if fully restated herein.

111. Plaintiff Balder is disabled within the meaning of the ADA.

112. Plaintiff Balder, with or without reasonable accommodation, was qualified for her position within Defendant MDHHS.

113. Defendant MDHHS knew about Plaintiff Balder's disability.

114. Plaintiff requested a reasonable accommodation with regard to telework for clerical duties.

115. Defendant MDHHS failed to provide the reasonable accommodation.

116. This failure to accommodate resulted in significant physical and emotional distress and led to Plaintiff Balder's constructive discharge.

## COUNT II

### FAILURE TO ACCOMODATE IN VIOLATION OF THE MPDCRA, MCL 37.1101, *et seq*

117. Plaintiff Balder incorporates Paragraphs 1 through 116 as if fully restated herein.

118. Plaintiff Balder is disabled within the meaning of the MPDCRA.

119. Plaintiff Balder, with or without reasonable accommodation, was qualified for her position within Defendant MDHHS.

120. Defendant MDHHS knew about Plaintiff Balder's disability.

121. Plaintiff requested a reasonable accommodation with regard to telework for clerical duties.

122. Defendant MDHHS failed to provide the reasonable accommodation.

123. This failure to accommodate resulted in significant physical and emotional distress and led to Plaintiff Balder's constructive discharge.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff Balder prays this Court grant her judgment against Defendant MDHHS and award her the following relief:

A. Pay for the four weeks of unpaid leave Plaintiff Balder's increased pain forced her to take;

B. Compensatory damages to reimburse Plaintiff Balder for medical expenses, physical distress and emotional distress incurred as a result of Defendant's actions, in an amount to be determined at trial;

C. Punitive damages as to Defendant MDHHS, due to the wanton, willful, intentional and/or reckless disregard for the rights of Plaintiff;

D. Issue an injunction requiring Defendant MDHHS and MRS to provide training to all of its employees, including Human Resources, Management and Supervisory personnel on the Americans with Disabilities Act, with emphasis on reasonable accommodations for employees with disabilities.

E. Reasonable attorney's fees, expert witness fees, costs and expenses incurred to prosecute this action;

F. Any other relief this Court believes just and necessary.

        Respectfully submitted,

        NACHTLAW, P.C.

        /s/ David Nacht
        David A. Nacht (P47034)
        NACHTLAW, P.C.
        Attorney for Plaintiff
        101 N. Main St., Suite 555
        Ann Arbor, Michigan 48104
        (734) 663-7550
        dnacht@nachtlaw.com

Date: December 11, 2020

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

HANNAH BALDER,

       Plaintiff,                         Case No.:

v.                                                Hon.

MICHIGAN DEPARTMENT OF HEALTH &
HUMAN SERVICES,

       Defendant.

_____

Kyle M. Williams (P77227)
Simon Zagata (P83162)
Disability Rights Michigan
Attorneys for Plaintiff
4095 Legacy Parkway, Ste. 500
Lansing MI  48911-4263
Phone: (517) 487-1755
kwilliams@drmich.org
szagata@drmich.org

David A. Nacht (P47034)
Fabiola A. Galguera (P84212)
NACHTLAW, P.C.
Attorneys for Plaintiff
101 N. Main St., Suite 555
Ann Arbor, Michigan 48104
(734) 663-7550
dnacht@nachtlaw.com
fgalguera@nachtlaw.com

## **DEMAND FOR TRIAL BY JURY**

     Plaintiff Hannah Balder, by and through her counsel, hereby demands a jury trial in the above-captioned matter for all issues so triable.

2

        Respectfully submitted,

        NACHTLAW, P.C.

        */s/* David A. Nacht
        David A. Nacht (P47034)
        NACHTLAW, P.C.
        Attorney for Plaintiff
        101 N. Main St., Suite 555
        Ann Arbor, Michigan 48104
        (734) 663-7550
        dnacht@nachtlaw.com

Date:   December 11, 2020